# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) <br> ) <br> RICHARD D. HORNE and ) <br> PATRICIA NELSON HORNE, ) <br> ) <br> Debtors, ) <br> ) <br> MARY BETH MANTIPLY, ) <br> ) <br> Plaintiff/Appellant, ) <br> ) <br> v. ) <br> ) <br> RICHARD D. HORNE and ) <br> PATRICIA NELSON HORNE, ) <br> ) <br> Defendants/Appellees. ) | CIVIL ACTION NO. 13-00258-CB-B |

## **OPINION**

For the second time, this matter is before the Court on appeal of an order of the bankruptcy court. After the Court entered its opinion in the first appeal, but before entry of final judgment, appellant Mary Beth Mantiply filed a second notice of appeal. The Court granted Mantiply's motion to consolidate the two appeals. In the current appeal, Mantiply appeals "from the Judgment Order, or Decree of the Bankruptcy Judge of December 17, 2013." (Notice of App., R2. 3, Bkt. Doc. 388.)[1] That order denied Mantiply's "Motion for Recusal Based on Newly Discovered

---

[1] The record on appeal from the second appeal (Doc. 58) will be designated "R2.". The record on appeal from the first appeal (Doc. 1) will be designated "R.". The abbreviation "Bkt. Doc." refers to the cm/ecf docket entry in bankruptcy court. As is customary in this district, the abbreviation "Doc." refers to the cm/ecf docket entry in this Court.

Evidence and Motion to Supplement the Record on Appeal" (R2. 862-66, Bkt. Doc. 376) and Motion to Supplement (R2. 867-68, Bkt. Doc. 377.)

**Procedural History**

In 2011, Debtors Richard Horne and Patricia Horne filed a motion for sanctions in bankruptcy court against attorney Mary Beth Mantiply for violating the bankruptcy code's automatic stay provision and for violating the bankruptcy code's discharge injunction. After a lengthy period of discovery and an evidentiary hearing, Judge Shulman found in favor the Debtors and against Mantiply on both counts. On January 24, 2013, the judge entered an oral motion order granting the motion and awarding compensatory damages, punitive damages, and attorney's fees. Altogether, the sanctions award amounted to $81,714.31 ($40,000 in compensatory and punitive damages and $41,714.31 in attorneys fees). Mantiply appealed ("the first appeal").

While the first appeal was pending, Mantiply filed two identical motions seeking relief from judgment in bankruptcy court based on "newly discovered evidence." Judge Shulman denied both motions—the first because of the divestiture rule and the second because it was based on Fed. R. Civ. P. 62.1, which is inapplicable to bankruptcy courts. Mantiply subsequently filed a motion in this Court seeking, in effect, limited remand so that the bankruptcy court could consider the "newly discovered evidence." This Court declined to remand the motion to the bankruptcy court for its consideration. (Doc. 24.) Remand would have been futile because the motion clearly did not meet four of the five requirements for relief from

judgment based on newly discovered evidence set forth in Fed. R. Civ. P. 60(b). (*Id.* at 6-9.)

Richard Horne died during the pendency of the first appeal. His counsel filed suggestion of death on September 6, 2013. (Doc. 31.) On October 28, 2014, Patricia Horne, as personal representative of the Estate of Richard Horne, was substituted for Richard Horne. (Doc. 34.) The same day, the Court entered issued its opinion affirming the bankruptcy court's award of sanctions. (Doc. 35.) Final judgment was not entered, however. By separate order, the Court granted the Hornes' motion for attorneys' fees on appeal and set a deadline for submission of fee request and supporting documentation. That order also provided Mantiply an opportunity to object to the amount of the fee request.

On November 12, 2013, Mantiply filed a pleading in this Court entitled "Motion for Rehearing; to Alter, Amend or Vacate Opinion, or for Relief from Opinion." (Doc. 37.) Attached to the motion were several exhibits, including affidavits from Angela Brunson, Frank Kruse, Gus Dimitreolos, Paulene Phillips and two affidavits from Mary Beth Mantiply. (Doc. 37-1.) The motion was a "bare bones" motion, which cited no law or facts and for that reason was denied. (Doc. 41.) On November 27, 2013, Mantiply filed a pleading entitled "Objections to Attorney Fees, Amended and Renewed Motion for Rehearing, or for Relief from Opinion and Brief in Support Thereof." (Doc. 42.) Included as part of the same filing, albeit a separate document was a "Motion for Recusal Based on Newly Discovered Evidence and Motion to Supplement the Record on Appeal." (Doc. 42, pp.

12- 16) and attached affidavits[2] (Doc. 42, pp. 17-29).  In the order addressing the claims raised in that pleading, this Court observed that the "Appellant ha[d] not identified any legal basis for asserting th[e] [recusal] motion."  Because the motion most closely resembled a Rule 60(b)(2) motion for new trial based on newly discovered evidence, the Court held that it should first be presented to the bankruptcy court.  (*Id.* at 4-5.)

In fact, on the same day she filed the above-described motions in this Court, Mantiply filed an identical "Motion for Recusal Based on Newly Discovered Evidence and Motion to Supplement the Record on Appeal" in bankruptcy court. (R2. 862, Bkt. Doc. 376.)  In addition, Mantiply filed in bankruptcy court a separate "Motion to Supplement the Record" requesting that the bankruptcy court supplement the record on appeal with a transcript of a March 25, 2013 hearing to set the bond amount.[3]  (R2. 867-68, Bkt. Doc. 377.)  On December 17, 2013, Judge Shulman entered an order denying the motions.  This appeal ("the second appeal") followed, and because final judgment had not been entered on the first appeal the two appeals were consolidated.

**Mantiply's Newly Discovered Evidence & Judge Shulman's Order**

---

[2] These are the same affidavits submitted with the "Motion for Rehearing…" (Doc. 37.)

[3] Adding confusion to the chaos of this record, the Motion for Recusal. . . and to Supplement. . ." requests that the bankruptcy court supplement the record on appeal "with the attached affidavits" (R2. 864, Bkt. Doc. 376), but no affidavits are attached.  Instead, those affidavits and other related documents are attached to the separate "Motion to Supplement the Record on Appeal" regarding bond hearing transcript.  (R2. 869-81, Bkt. Doc. 377-1.)  The affidavits are identical to those filed in this Court.

4

Mantiply's "Motion for Recusal Based on Newly Discovered Evidence" was based on her discovery (made less than three weeks prior) that Judge Shulman's courtroom deputy, Angela Jemison, and Chrissie Carnley, a paralegal for one of the Hornes' attorneys, are sisters.  Carnley had submitted an affidavit on behalf of the Hornes attesting that she had served copies of the amended petition adding Mantiply's clients as creditors in the bankruptcy case on Mantiply via United States mail.  Mantiply denied, under oath, having received them.[4]  According to the motion, "Judge Shulman made factual findings that Mrs. Mantiply's testimony as to numerous issues was not credible and resolved almost every disputed question of fact and inference against her."  (R2. 863, Bkt. Doc. 376.)

The motion cited no Bankruptcy Rule or Federal Rule of Civil Procedure.  After reciting the recusal standard of 28 U.S.C. § 455(a), which requires that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned,"  Mantiply argued that "observers would certainly entertain doubt" about Judge Shulman's impartiality because he "was required to choose between the conflicting testimonies of his Courtroom Deputy's sister and Mrs. Mantiply."  (*Id.* 864.)  The motion did not seek any specific remedy other than recusal.

In response, Horne argued that the appeal had divested the bankruptcy of jurisdiction to consider the motion.  Alternatively, Horne pointed out the motion's "multiple factual inaccuracies and incorrect legal assertions." (R2. 889, Bkt. Doc.

---

[4] There were a total of six amended petitions, one for each of Mantiply's clients.

5

379.) Horne also filed an objection to the motion to supplement the record on appeal. (R2. 931, Bkt. Doc. 380.)

In his written order dated December 17, 2013, Judge Shulman found that the bankruptcy court had jurisdiction to "either deny a Rule 60(b) motion or indicate its opinion that the arguments raised have merit when a case is on appeal." (R2. 963, Bkt. Doc. 386) (citing *Mahone v. Ray*, 326 F.3d 1176 (11th Cir. 2003)). Next, because Mantiply had asserted the motion for recusal as one based on "newly discovered evidence" Judge Shulman addressed it as a motion for relief from judgment based on newly discovered evidence under Fed. R. Civ. P. 60(b)(2) (adopted by Bankruptcy Rule 9024) and applied the five requirements for relief from judgment based on newly discovered evidence: "(1) the evidence was newly discovered since trial; (2) the movant used due diligence to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." (*Id.* 964) (citing *Waddell v. Henry County Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003)).

After finding that the first two requirements were met, Judge Shulman noted that "[t]he crux of Mantiply's argument is that [the judge] was biased in favor of the evidence presented by the Hornes that Mantiply was served with the amendments that added her clients to the Hornes' bankruptcy schedules due to the familial relationship between his deputy clerk and the proponent of the affidavit to prove service [Carnley]." (R2. 964, Bkt. Doc. 386.) Judge Shulman found that the evidence was impeachment evidence because it was directed at bias and related to Mantiply's credibility. He also found that the evidence was cumulative because "there was

evidence of Mantiply's actual knowledge of the Hornes' bankruptcy almost from the time of filing." (*Id.*) Next, the judge determined that the evidence was not material because "Mrs. Carnley's affidavit merely outlined the routine and ministerial actions she took as Mr. Wynne's legal assistant to serve the amendments." [5] (*Id.* 965.) Finally, Judge Shulman concluded that the outcome of the hearing would have been the same even if the relationship between Carnley and Jemison had been raised at that time because "[t]he Court was not biased by the relationship." (*Id.*) The order concluded by denying "Mantiply's motion for recusal based on newly discovered evidence and motion to supplement the record."[6] (*Id.*)

**Issues Presented**

On appeal, Mantiply argues that Judge Shulman applied the wrong legal analysis to her motion for recusal based on newly discovered evidence and that application of the correct legal standard should result in Judge Shulman's

---

[5] Furthermore, Judge Shulman rejected Mantiply's implication that something nefarious was afoot because Carnley's testimony was not verified by a notation of service on the docket sheet. Pursuant to Bankruptcy Local Rule 1009-1, "the debtor's attorney is responsible for serving amendments on creditors, not the Clerk's office; therefore, there is not docket entry regarding service." (*Id.* 965)

[6] The order did not specifically address the motion to supplement the record contained within the motion for recusal, nor did it specifically address the separately filed motion to supplement the record with the bond hearing transcript. It did, however, refer to both motions by docket entry. (*Id.* 967.) Therefore, the order applies to both motions to supplement.

disqualification and vacatur of the sanctions award.[7]  In response, Horne argues that the bankruptcy court did not abuse its discretion in denying the recusal motion. [8]

**Standard of Review**

A district court sitting as an appellate court in a bankruptcy appeal reviews the bankruptcy court's legal conclusions *de novo* and reviews findings of fact under a clearly erroneous standard.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).

**Legal Analysis**

*Introduction*

In retrospect, the legal analysis applied by the bankruptcy court was wrong; however; application of the correct legal standard leads to the same result.[9]  Confronted with a "Motion for Recusal Based on Newly Discovered Evidence" in a matter in which judgment had been entered, Judge Shulman analyzed it under Rule 60(b)(2) as a motion for relief from judgment based on newly discovered evidence.[10]  Postjudgment motions to vacate based on violations of 28 U.S.C. §

---

[7] In her Statement of Issues and Standard of Review, Mantiply also asserts the following issue:  "Whether the Trial Court's denial of Appellant's Motion to Supplement was error[?]"  (Appellant's Br. 3, Doc. 66.)  Nowhere in her brief does she identify which motion to supplement she is referring to, identify the error, or address the issue.  The Court deems this issue to be abandoned.

[8] Horne also points to a number of issues and arguments raised in Mantiply's motions that are due to be stricken for failure to cite to the record or to legal authority.  Though many of Horne's arguments are well taken, it is ultimately unnecessary to resolve them.

[9] An appellate court may affirm a lower court's decision "'on any ground that appears in the record whether or not that ground was relief upon or even considered by the court below.'"  *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798-99 (11th Cir. 2005) (quoting *Powers v. United States*, 996 F.2d 1121, 1123-1124 (11th Cir. 1993)).

[10] Horne argues that Mantiply never requested relief from judgment below and, therefore, the issue cannot be considered on appeal.  This argument presents a close question. Horne points out that the motion filed in bankruptcy court sought

8

455(a) fall under Rule 60(b)(6), which provides relief from judgment under "upon such terms as are just." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988). On appeal, the denial of a Rule 60(b) motion is reviewed for abuse of discretion. *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1019 (11th Cir. 2006).

The Supreme Court has held that "Rule 60(b)(6) relief is [ ] neither categorically available nor categorically unavailable for all § 455(a) violations." *Liljeberg*, 486 U.S. at 863. Instead, three issues should be considered in deciding whether a judgment should be vacated when a violation has occurred: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864. The Court rejects Mantiply's claim that the sibling relationship between Judge Shulman's courtroom deputy and Ms. Carnley created an appearance of impropriety. Even though affirmance is appropriate on that ground alone, the Court also considers, and rejects, Mantiply's position that the purported violation would entitle her to relief from judgment.

### *Judge Shulman's Failure to Disqualify Himself Did Not Violate § 455(a)*

The first question to be considered is whether the sibling relationship between a witness and a courtroom deputy creates an appearance of impropriety.

---

only "recusal" in a matter no longer pending before the bankruptcy court. Not until appeal did Mantiply assert that the judgment should be vacated. It is true that "an issue not raised [below] and raised for the first time in an appeal will not be considered [on appeal]." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). The motion filed below addressed only grounds for recusal under 28 U.S.C. § 455(a), did not address the point of a motion for recusal filed post-judgment, did not cite any rule supporting relief from judgment, and did not request specific relief other than recusal. Nevertheless, Judge Shulman interpreted the motion as one for relief from judgment and addressed it as such. For that reason, this Court will also address the merits of the claim.

9

The unequivocal answer is that it does not. The Court has neither found, nor been directed to, any cases in which recusal was sought based on the relationship between a court's administrative employee, such as a courtroom deputy, and a witness or party. There are, however, a number of recusal cases involving law clerks, who are members of chambers staff and who engage in substantive work on cases assigned to the judge. The rule that emerges from those cases is this: If a law clerk's relationship with an attorney or party in a case creates an appearance of impropriety, then the law clerk is disqualified from working on that case but the judge is not. *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1523-25 (11th Cir. 1988) (appearance of impropriety based on totality of circumstances, including judge giving credit to law clerk in opinion, law clerk's father partner in law firm that represented defendant, and law clerk holding hearing in judge's absence); *Hunt v. Am. Bank & Trust Co. of Baton Rouge,* 783 F.2d 1011 (11th Cir. 1986) (per curiam), (recusal not required where two of judge's law clerks accepted offers of employment from law firm representing defendants while case was pending and case had been assigned to one of those law clerks as a "ministerial" matter before law clerk recused); *Crawford v. Dept. of Homeland Security*, 245 Fed. Appx. 369 (5th Cir. 2007) (affirming denial of recusal motion based on unsupported speculation that law clerk previously litigated against plaintiff and noting that "the final decisions in this case were made by the judge, not the law clerk"). The mere existence of a relationship between a law clerk and a party does not disqualify the judge; rather, disqualification may be called for only if the law clerk works on the case, *i.e.*, makes a substantive contribution to the outcome of the case.

A courtroom deputy functions as an administrative employee who plays no substantive role in the decision-making process. A law clerk's relationship to a party does not create an appearance of impropriety, as long as the law clerk performs no substantive work on the case. A fortiori, no appearance of impropriety arises from courtroom deputy's relationship to a party because that courtroom deputy's function is administrative, not substantive. To paraphrase the First Circuit: "Both bench and bar recognize, moreover, that judges, not [courtroom deputies] make the decisions." *In re Allied–Signal, Inc.*, 891 F.2d 967, 971 (1st Cir. 1989).

Mantiply's reliance on *United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989), to demonstrate the need for recusal is woefully misplaced. In *Kelly*, a criminal case tried nonjury, the judge's wife and the wife of a witness for defense were close friends. The judge asked the witness's wife into chambers during the trial where she told him that her husband was going to be a witness. The judge informed the parties of the friendship, "expressed profound doubts" that he should continue, "expressed near certainty" that he should recuse, and admitted that the situation had caused him marital disharmony. *Id.* at 745. Nevertheless, he did not recuse himself for fear that jeopardy had attached. The appellate court reversed, holding that all of these considerations—the personal relationship, the judge's expressed discomfort, and his decision to avoid a potential double jeopardy claim—created an appearance of impropriety. In the instant case, the witness had no relationship to either the judge or a member of his family. For that reason alone, *Kelly* is inapposite.

In further support of her argument that recusal was required under § 455(a), Mantiply cites a number of Judge Shulman's rulings and other case-related actions

that she contends demonstrate partiality.  This Court will not attempt to address in detail this exhaustive list of complaints of unfair treatment.  Suffice it to say that "judicial rulings alone almost never constitute a valid basis for [a recusal motion under § 455(a)] when no extrajudicial source is involved."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Because the Court has found no extrajudicial bias (*i.e.*, the sibling relationship between the courtroom deputy and the witness did not create an appearance of impropriety), the evidence of unfavorable rulings or treatment cannot support the recusal argument.[11]

### *The Decision Would be Affirmed Even if Recusal Had Been Required*

In *Liljeberg*, the Supreme Court held that failure to recuse when recusal is warranted is not necessarily grounds for reversal.  Instead a court must consider the risk of injustice to the parties, risk of injustice in other cases and the risk of undermining the public's confidence in the judicial process.  *Liljeberg*, 486 U.S. at 864.  Affirming the bankruptcy judge's decision would not reflect adversely on any of these factors because the evidence supporting the sanctions award was overwhelming.  Mantiply was sanctioned for willful violation of the automatic stay, 11 U.S.C. § 362(a)(1), and for willful violation of the discharge injunction, 11 U.S.C. §

---

[11] Mantiply has made a number of unsupported, inflammatory accusations regarding Judge Shulman's handling of this case.  This Court cannot allow them all to go without remark.  On pages 15-16 of her brief, Mantiply argues that Judge Shulman's partiality was apparent because he ruled too quickly on Mantiply's February 20, 2013 motion to vacate the bankruptcy judgment.  Because a ruling was entered less than two working days after the motion was filed, Mantiply concludes that "having your sister running the Judge's docket comes in quite handy for a legal assistant, her boss and their clients when the collection of a large monetary judgment is at stake."  (Appellant's Br. 16.)  Mantiply concludes her brief in a similar vein, requesting that "the judgment [ ] be vacated and the case remanded to an impartial Judge and preferably one without a fox guarding the henhouse."  (*Id.* 21.) These gratuitous statements serve no useful purpose.

524(a). Willful violation of either statute occurs when a party is aware of the bankruptcy and intended the actions that violated the stay or discharge. *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996). Mantiply admittedly knew of the Hornes' bankruptcy petition shortly after it was filed. With that knowledge, she filed the state court action against Richard Horne and kept that action alive long after the discharge had been entered. Indeed, Mantiply admits that she violated the automatic stay and seeks reversal only as to violation of the discharge injunction.

Mantiply argued at the sanctions hearing that she lacked the knowledge necessary for a willful violation of the discharge injunction because she was not aware that he clients had been added as creditors in the bankruptcy petition. In her current appeal, Mantiply maintains that the only evidence of her knowledge is the allegedly tainted Carnley affidavit and, therefore, reversal is warranted.[12] That argument ignores crucial law and evidence. First, knowledge of the existence of the bankruptcy proceeding is adequate to put a creditor on notice that he must file a complaint in bankruptcy contesting dischargeability or be forever barred, even if the debtor failed to list him as a creditor. *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 461 (11th Cir. 1988) (per curiam).[13] Therefore, because Mantiply had actual knowledge of the bankruptcy petition, notice that her clients had been listed as creditors was unnecessary. Second, there is indisputable evidence that Mantiply received actual

---

[12] Carnley testified that she served the amended petition adding Mantiply's clients by mailing them to Mantiply. Mantiply denied receiving any of the six copies Carnley allegedly mailed.

[13] Mantiply points out that *Alton* was abrogated by *Kontrick v. Ryan*, 540 U.S. 443 (2004). It was, however, abrogated on a completely unrelated issue, i.e., whether a bankruptcy court had discretion to consider a late-filed motion to extend time to file dischargeability complaint. With respect to other issues, *Alton* remains good law.

notice that her clients were listed as creditors. After her clients were added as creditors, Mantiply received at least 120 notices, on behalf of her clients, from the bankruptcy court. (Oct. 28, 2013 Opinion 3, Doc. 35.)

**Conclusion**

For the reasons set forth above, the Court finds that Judge Shulman was not required to recuse himself from this case and did not err in denying the motion for relief from judgment. Accordingly, the order is **AFFIRMED**.

**DONE** and **ORDERED** this the 8th day of April, 2014.

*s/Charles R. Butler, Jr.*
**Senior United States District Judge**